UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSSELL PEELER,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    Case No. 3:13-cv-1323 (JAM) |
| U.S. DEPT OF JUSTICE and<br>FEDERAL BUREAU OF INVESTIGATION,<br>    Defendants. | :<br>:<br>:<br>: |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Russell Peeler is on death row in Connecticut following his conviction in Connecticut state court for capital murder of a mother and her eight-year-old boy.[1] In an effort to show that certain telephone calls did not occur—calls that were the subject of testimony in his state court trial—he seeks telephone record information pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, that he believes to be in the possession of defendants Federal Bureau of Investigation and the U.S. Department of Justice. *See State v. Peeler*, 2013 WL 2382956 (Conn. Super. Ct. 2013) (explaining potential relevance of plaintiff's requested telephone record information).[2] Defendants have produced some records but declined to produce others or produced records only in redacted form.

---

[1] In addition to the sentence of death that has been imposed for the murder of the mother and her son, plaintiff has also been separately prosecuted in state court and sentenced to 105 years imprisonment for the murder of a third person and for other related charges. State of Connecticut Judicial Branch, Criminal/Motor Vehicle Conviction Case Detail, Docket Nos. FBT-CR98-0140050-T & FBT-CR97-0132912-T, http://www.jud.ct.gov/crim.htm (follow "Convictions: Search by . . . Docket Number" hyperlink; then enter the cited docket numbers); *see also* Richard Weizel, *Top Connecticut Court Hears Death Penalty Appeal*, Reuters, July 10, 2014, http://www.reuters.com/article/ 2014/07/10/us-usa-deathpenalty-connecticut-idUSKBN0FF1J220140710. In addition, plaintiff has been prosecuted in federal court and sentenced to life imprisonment on drug trafficking charges. *See Peeler v. United States*, 2005 WL 1719718 (D. Conn. 2005).

[2] Plaintiff has previously litigated and lost a prior FOIA request. *See Peeler v. U.S. Dep't of Justice*, 2013 WL 5448515 (D. Conn. 2013).

Plaintiff now challenges the completeness of defendants' FOIA responses. Defendants have moved for summary judgment, but plaintiff has failed to file any opposition. For the reasons that follow, defendants' unopposed motion for summary judgment is granted.

## BACKGROUND

By letter dated January 26, 2012, plaintiff submitted a FOIA request to the FBI. Plaintiff sought "the calls and times of calls . . . . for the month of January 7, 1999 from (203)-373-0780." Defs.' Ex. A, Doc. #23-2 at 2. Plaintiff stated that this number was registered to his deceased mother and had been retained by his father. The FBI acknowledged receipt of the request. In response to plaintiff's letter inquiring about the delay in providing the records, the FBI informed plaintiff that, because his request implicated privacy concerns of third parties, he must submit additional documentation before the FBI could release any information. The FBI directed plaintiff to submit the express authorization of the third parties, proof of their death, or justification that the public interest in disclosure of the information outweighed personal privacy interests. Plaintiff also was told that he could appeal this response to the Department of Justice Office of Information Policy ("DOJ OIP").

Plaintiff provided a copy of his mother's death certificate. The FBI informed plaintiff that the request was being investigated. The FBI then conducted a search of its records for any documents responsive to plaintiff's request. The FBI determined that, if any responsive information existed in the records, it would be located in plaintiff's criminal file, which had been compiled in the course of a criminal investigation for law enforcement purposes.

Criminal and law enforcement-related records are included in the Central Records System ("CRS") of the FBI. Searches of the CRS are performed through the Automated Case Support

2

System using General Indices, which are index cards on various subject matters. To locate documents responsive to plaintiff's request, an FBI employee searched the CRS using plaintiff's first and last names as well as phonetic sounds and alternate spellings along with his date of birth. The search identified one multi-subject criminal investigation file. Further searches were conducted within the file to identify responsive documents. The FBI located and reviewed ten pages that were responsive to plaintiff's request.

By letter dated January 18, 2013, the FBI responded to plaintiff's request. Of the ten pages, the FBI released four pages in part and withheld six pages. The information was withheld pursuant to FOIA exemptions 3, 6, and 7(C). *See* 5 U.S.C. §§ 552(b)(3), (b)(6), & (b)(7)(C). Plaintiff was advised that he could appeal the decision to withhold the information. By letter dated January 30, 2013, plaintiff appealed the decision to DOJ OIP, and on July 11, 2013, the DOJ OIP affirmed the FBI's decision on plaintiff's first FOIA request to withhold information pursuant to FOIA exemptions 3, 6, and 7(C) as well as on the adequacy and reasonableness of the search.

Several months later, by letter dated March 26, 2014, the FBI informed plaintiff that it had determined that the results of the first search were incomplete and conducted a second search of his file. The FBI reviewed 18 pages in total. The eight additional pages were found in a different sub-file within the same investigative file. Of the 18 pages, the FBI released 13 pages in part and five pages in full. The redacted information on the 13 pages was withheld pursuant to FOIA exemptions 6 and 7(C). The FBI searched all relevant records systems for records responsive to plaintiff's first FOIA request and released all reasonably segregable portions of the records found.

While plaintiff's first FOIA request was being adjudicated, plaintiff submitted a second FOIA request to the FBI by letter dated March 18, 2013, seeking subscriber and toll records for the

3

month of January 1999 for an additional telephone number: (203) 372-9653. The FBI informed plaintiff that, because the request implicated privacy concerns of third parties, he would have to submit additional documentation before the FBI could release any information, if responsive information in fact existed. Plaintiff was instructed to provide express authorization and consent of the third-party individuals, proof of death, or justification that the public interest in disclosure outweighed personal privacy interests. Plaintiff also was informed that he could appeal the decision to the DOJ OIP. Plaintiff appealed the FBI's response to his second request.

By a letter dated July 11, 2013—the same day the DOJ OIP issued its decision on plaintiff's first FOIA request—the DOJ OIP affirmed the FBI's decision on plaintiff's second FOIA request on partly modified grounds. The DOJ OIP concluded that the FBI properly refused to confirm or deny the existence of records responsive to the request unless plaintiff provided proof of death, consent, official acknowledgment of an investigation, or an overriding public interest.

On September 9, 2013, plaintiff filed a handwritten *pro se* complaint to challenge defendants' responses to both of his FOIA requests. Defendants have moved for summary judgment, and plaintiff has filed no response to defendants' motion (despite having sought and received an extension of time to file a response).

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). When resolving a summary judgment

motion in a FOIA case, a district court ordinarily proceeds primarily by affidavits rather than by documentary or testimonial evidence. *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012).

The Freedom of Information Act "was enacted to promote honest and open government . . . and to ensure public access to information created by the government in order to hold the governors accountable to the governed." *Wood v. F.B.I.*, 432 F.3d 78, 82 (2d Cir. 2005) (internal quotation marks and citations omitted). FOIA mandates disclosure of all records held by a federal agency unless the information falls within enumerated exemptions. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001).

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate," *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), and, as the Second Circuit has recently made clear, "that an exemption applies to each item of information it seeks to withhold." *Ctr. for Constitutional Rights v. C.I.A.*, 765 F.3d 161, 166 (2d Cir. 2014) (citations omitted); *see also* 5 U.S.C. § 552(a)(4)(B). "[A]ll doubts as to the applicability of the exemption must be resolved in favor of disclosure." *Ctr. for Constitutional Rights*, 765 F.3d at 166 (internal quotation marks and citation omitted).

Although the substance of plaintiff's complaint is somewhat difficult to discern, I construe the complaint as challenging each of the three issues addressed in the DOJ OIP decisions: (1) whether the FBI's search for records was adequate in response to the first FOIA request; (2) whether the FBI properly withheld information responsive to the first FOIA request; and (3) whether the FBI properly refused to confirm or deny the existence of records responsive to the second FOIA request.

**1.** *Adequacy of Search*

In determining whether an agency conducted an adequate search, the Court considers the method employed, not the results obtained. *New York Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 124 (2d Cir.), *opinion amended on denial of reh'g*, 758 F.3d 436 (2d Cir. 2014), *supplemented and reh'g denied*, 762 F.3d 233 (2d Cir. 2014); *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003). Thus, a search may be considered adequate even if it does not identify all responsive records. To support a motion for summary judgment and show that a search is adequate, the agency may submit an affidavit from an agency employee responsible for supervising a FOIA search. The affidavit will be sufficient if it is "detailed, nonconclusory and submitted in good faith." *Wood*, 432 F.3d at 85. Agency affidavits and declarations are "accorded a presumption of good faith." *Carney*, 19 F.3d at 812 (internal quotation marks and citation omitted). "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

Here, defendants have filed the declaration of David M. Hardy, the Section Chief of the Record/Information Dissemination Section, Records Management Division of the FBI. Hardy supervises the employees who respond to FOIA requests and is aware of how plaintiff's requests were handled. Hardy states that, after reviewing the request and submitted documents, the FBI determined that the most logical location for any responsive records would be in plaintiff's criminal file, located within the CRS. The FBI searched the CRS for any investigative files indexed to plaintiff's birth date and name, including alternative spelling variations, for the relevant

time period. One main investigative file was located. The FBI then used additional information supplied by plaintiff to narrow the search within the investigative file to locate responsive records. The FBI ultimately located 18 pages of records, releasing five pages in full and 13 pages in part with redaction. The DOJ OIP affirmed the search as reasonable and adequate.

The FBI's approach was efficient and appropriate. The FBI is not required to search every available record system after it determines a single location for all responsive records. *See Moayedi v. U.S. Customs & Border Prot.*, 510 F. Supp. 2d 73, 80 (D.D.C. 2007) ("[I]f searching only one database would be 'reasonably calculated to uncover all relevant documents,' then such search may be deemed adequate.") (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). Because plaintiff sought the records to challenge his conviction, the FBI's determination that any responsive records would be located in plaintiff's criminal file, and its subsequent decision to search only the CRS, were reasonable.

Plaintiff has not met his evidentiary burden to challenge the adequacy of the FBI's search. He is required to present evidence rebutting the FBI's initial showing of a good faith search, but has not done so. *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999); *Ray v. F.B.I.*, 441 F. Supp. 2d 27, 32–33 (D.D.C. 2006). Accordingly, defendants are entitled to summary judgment insofar as plaintiff challenges the adequacy of the FBI's search.

### 2. Withholding Records under Privacy Exemptions 6 and 7(C)

FOIA mandates the release of records unless the documents fall within one of the enumerated exemptions. *See Klamath Water Users Protective Ass'n*, 532 U.S. at 7. Exemptions 6 and 7(C) are at issue in this case. Exemption 6 provides that FOIA disclosure requirements do not apply to "personnel and medical files and similar files the disclosure of which would constitute a

clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) provides that FOIA's disclosure requirements do not apply to "records or information compiled for law enforcement purposes" if production of such records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).

To satisfy its burden of demonstrating that an exemption applies, and to prevail on summary judgment, the agency may submit "affidavits [that] 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Am. Civil Liberties Union v. Dep't of Justice*, 681 F.3d 61, 69 (2d Cir. 2012) (quoting *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009)). If the FOIA litigation threatens to reveal "the very information the agency hopes to protect," the affidavit may contain only "brief or categorical descriptions" of the information withheld. *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (internal quotation marks and citation omitted); *see also Halpern v. F.B.I.*, 181 F.3d 279, 298 (2d Cir. 1999) ("Reasonableness demands a certain respect for the practicalities of the situation.").

In analyzing the applicability of exemption 7(C), a court must consider three factors: (1) whether the document was compiled for law enforcement purposes, (2) whether the record implicates a recognized privacy interest, and (3) whether the privacy interest is outweighed by an overriding public interest in disclosure of the information. *See Massey v. F.B.I.*, 3 F.3d 620, 624–25 (2d Cir. 1993), *abrogated on other grounds by Milner v. Dep't of Navy*, 562 U.S. 562 (2011).

As to the first factor, the records here were compiled during the FBI's criminal

investigation of plaintiff. *See* Doc. #23-5 at 15, ¶ 39. The Second Circuit has held that exemption 7(C) is generally applicable to FBI records, as "all records of investigations compiled by the FBI are for law enforcement purposes." *Halpern*, 181 F.3d at 296. Thus, the first requirement is met.

Regarding the second factor, the FBI concluded that there was a recognized privacy interest in the personal or identifying information relating to four groups of individuals: (1) FBI special agents, (2) third parties merely mentioned in the records, (3) recipients of administrative subpoenas or individuals preparing or supplying responses to those subpoenas, and (4) a third party of investigative interest. A court considering this factor will grant an exemption only if the requested records implicate a recognized and substantial privacy interest. *See Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (court must "determine whether disclosure of the files would compromise a substantial, as opposed to *de minimis*, privacy interest").

Personal information of individuals is a privacy interest sufficient to warrant exemption from FOIA's disclosure requirements. *See Associated Press v. U.S. Dep't of Justice*, 549 F.3d 62, 65 (2d Cir. 2008) (*per curiam*) ("Personal information, including a citizen's name, address, and criminal history, has been found to implicate a privacy interest cognizable under the FOIA exemptions."). Federal law enforcement personnel have a recognized privacy interest in their identities because of the work they perform. Revealing the identities of these persons could subject them to threat or harassment while they conduct their official duties and personal affairs. *See Halpern*, 181 F.3d at 296–97; *see also Wood*, 432 F.3d at 87–89 (identities of investigators conducting internal FBI investigation exempt from disclosure). There is a similar risk in releasing identifying information for the third group of individuals—administrative employees of the company that provided the telephone records to the FBI in response to an administrative

subpoena—because those employees could be subjected to unofficial inquiries, harassment, and even physical harm. *Id.* ¶ 46.

There is also a legitimate privacy interest in the names and identifying information of third parties who are mentioned in the records. Even if the FBI were to release only their telephone numbers (and not the associated names), this would put their privacy at risk because telephone numbers can often easily be used to identify and locate individuals. *See* Doc. #23-5 at 18, ¶ 45. Likewise, the FBI properly recognized the privacy interests of a third party who may have been a target of the investigation. As explained in the Hardy declaration, "[b]eing linked with any law enforcement investigation carries a strong negative connotation and a stigma," and "[r]elease of the identity of the individual to the public could subject [him] to harassment or embarrassment, as well as undue public attention." *Id.* ¶ 47; *see also SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1205 (D.C. Cir. 1991) (explaining that "[e]xemption 7(C) affords broad[ ] privacy rights to suspects, witnesses, and investigators" (alteration in original) (internal quotations marks and citation omitted)).

In evaluating the final factor, the FBI determined the nature and strength of the privacy interest of every person whose name or other identifying information appeared in the responsive records and balanced that privacy interest against the public interest in disclosure. There is a public interest in disclosure if the information sought would shed light on the FBI's performance of its mission. *Long*, 692 F.3d at 193 (citing *Bibles v. Or. Natural Desert Ass'n,* 519 U.S. 355, 355–56 (1997); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 780 (1989)); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) ("the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be

10

informed about what their government is up to" (citation omitted)); Doc. #23-5 at 16, ¶ 42. But disclosing the identifying information for any of the four groups would not provide insight into the mission, operations, or activities of the FBI. *See, e.g.*, *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) ("[T]o the extent any information contained in 7(C) investigatory files would reveal the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations, those portions of responsive records are categorically exempt from disclosure.").

Moreover, plaintiff has not identified any other recognized public interest that would be served by disclosure of any of the group members' information. Plaintiff merely states that he seeks the information to challenge his criminal conviction. This is a personal, rather than public, interest. As the Second Circuit has recently explained, the "core purpose" of FOIA is to "contribut[e] significantly to public understanding *of the operations or activities of the government*," and "[g]oals other than opening agency action to public scrutiny are deemed unfit to be accommodated under FOIA when they clash with privacy rights." *Cooke v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 177 (2d Cir. 2014) (emphasis in original; internal quotation marks and citations omitted); *see also Brown v. F.B.I.*, 658 F.2d 71, 75 (2d Cir. 1981) ("The FOIA is not intended to be an administrative discovery statute for the benefit of private parties." (internal quotations marks and citation omitted)). The information regarding the identities of these individuals was properly withheld, and summary judgment for defendants is appropriate on this ground.

### 3. Declining to Confirm or Deny Existence of Responsive Records

Plaintiff's final challenge concerns the FBI's refusal to confirm or deny the existence of

records responsive to plaintiff's second FOIA request until he provided the requested documentation. "[A]n agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a[ ] FOIA exception." *Wilner*, 592 F.3d at 68 (alteration in original) (internal quotation marks and citation omitted). That is, such refusal is permitted only "if the FOIA exemption would itself preclude the *acknowledgment* of such documents." *Ibid* (emphasis in original) (internal quotation marks and citation omitted); *see also Ctr. for Constitutional Rights*, 765 F.3d at 164 n.5 (noting that so-called "*Glomar* response" that "neither confirms nor denies the existence of documents responsive to the request" may be appropriate); *Larson*, 565 F.3d at 861 ("[FOIA's] exemptions cover not only the content of protected government records but also the fact of their existence or nonexistence, if that fact itself properly falls within the exemption.").

To demonstrate that this response was proper, the agency may submit "a detailed affidavit showing that the information logically falls within the claimed exemptions." *Wilner*, 592 F.3d at 68 (internal quotations marks and citation omitted). The agency affidavit will be accorded substantial weight as long as "the justifications for nondisclosure are not controverted by contrary evidence in the record or by evidence of . . . bad faith." *Ibid* (internal quotation marks and citation omitted).

The Hardy Declaration states that releasing records concerning a third party without additional documentation to overcome privacy concerns would constitute an unwarranted invasion of personal privacy under exemptions 6 and 7(C). Doc. #23-5 at 9, ¶ 29. As stated in connection with the arguments above, association in any fashion with an FBI criminal investigation may expose an individual to unwarranted harassment and danger. Plaintiff does not argue that the

12

existence or nonexistence of material plaintiff sought in the second FOIA request was previously disclosed by the FBI. The Hardy Declaration confirms that none of the information was found in the public domain. *Id.* at 13, ¶ 35. Plaintiff has identified no contrary evidence in the record nor made a showing of bad faith on the part of defendants. I therefore conclude that the FBI's decision not to disclose the existence or nonexistence of responsive records without additional documentation was a reasonable response to the second FOIA request. Summary judgment is appropriate on this additional ground.

## CONCLUSION

Defendants' motion for summary judgment (Doc. #23) is GRANTED. The Clerk is directed to enter judgment in favor of defendants and close this case.

SO ORDERED.

    /s/ **Jeffrey Alker Meyer**
Jeffrey Alker Meyer
United States District Judge

Dated at Bridgeport, Connecticut, this 30th day of January 2015.